Please call the next case for argument. Case number 19-2745 from the District of Minnesota. United States v. Arturo Leal-Monroy. Ms. Kirkpatrick, we'll hear from you first. Thank you. May it please the court. My name is Lisa Kirkpatrick and I represent the United States in this appeal. The issue for this court is whether the district court committed error when it granted the defendant's motion to dismiss the indictment against the defendant, which charged him with illegal reentry after removal on the ground that the entry of the removal order was fundamentally unfair. The district court committed two separate errors, both of which warrant reversal in this case. They are related, but they are separate. The first error is that the district court applied the wrong standard to determine whether actual prejudice was shown. And second, the district court erred when it found that the defendant had carried his burden in this case. I'd like to start by talking about the errors the district court made and then turn to the defendant's arguments in his responsive brief in support of the district court's judgment. In order to lodge a collateral attack on an or under 1326D, a defendant is required to show both that there were fundamental defects in the proceeding, as well as the existence of actual prejudice. This court interprets actual prejudice to require both the showing of defects in the proceedings, as well as a reasonable likelihood that but for those defects, a defendant would not have been moved from the country. The district court here didn't require the defendant to make that showing. Instead, the district court required only that the defendant could have lodged arguments against removal. Now, the defendant was convicted in Illinois in 1997 of aggravated sexual abuse. And I don't want to minimize the seriousness of that offense, but it was essentially a statutory rape offense that involved, by statute, a victim under the age of 13 and a perpetrator 17 or over. That conviction was by definition an aggravated felony under federal immigration law. In 1996, just one year before the defendant's conviction, Congress expanded the definition of aggravated felony to include sexual abuse of a minor. The defendant's statutory rape conviction was for sexual abuse of a minor. And under immigration law, categorically, if an alien has been convicted of an aggravated offense, he is subject to deportation. There's no question here and there's no argument that the defendant was subject to deportation under 8 U.S.C. 1227 based on his conviction for an aggravated felony. The district court in this case found two defects in the removal proceedings. First, that the I.J. was unduly deferential to the immigration attorney. And second, that the I.J. essentially gave the defendant bad legal advice at the removal proceedings. The prejudice the district court required the defendant to show was not that he would not have been removed but for the errors in the proceedings. Instead, he required the defendant to show that the defendant might have made some arguments against removal had the proceedings unfolded differently. Now, the prejudice is really layer upon layer of speculation here. The district court found that had the I.J. not been so deferential to the immigration attorney, the I.J. would have set bond at $1,500. The immigration service would not have appealed that bond despite it being a mandatory detention case. Then the defendant would have made that bond. And then once out on bond, the defendant would have retained an attorney. Once he had an attorney, the defendant's attorney would have made arguments against removal. And might I add, those are arguments that really were not foreseen in 1998. They're arguments based on Descamps and Mathis. But under the defendant's interpretation, which he convinced the district court to replicate, the defendant would have made those arguments in 1998. And then the defendant would have convinced the I.J. to make the wrong decision and find that he wasn't removable. We know that's the wrong decision because case law that as it's developed in the years since has confirmed that the defendant's precise conviction, statute of conviction was for an aggravated felony. The defendant doesn't claim otherwise again. But this court has already held that the ability to make arguments does not establish actual prejudice. In Mendez Morales, this court held that not only must a defendant have to be able to make arguments against removal, a defendant has to be able to show probable merit. And here again, not only do we not have probable merit, we know there is no merit to the defendant's argument that he would not have been subject to removal. What relevance is there that those cases came later though? I think you're referring to the Seventh Circuit cases. They came a couple years later, and then I think another one six or seven years later. There actually is no relevance to that, Your Honor. And the reason for that, and this is a point I was going to make later, but I will absolutely make it right now, that Supreme Court forecloses the notion, Supreme Court precedent forecloses this argument that this court should essentially take a snapshot in time and look at the law as it existed in 1998. Under Supreme Court precedent, when a defendant lodges a collateral challenge to his criminal conviction, much like a collateral challenge to a removal order, excuse me, a defendant has to show, if he's arguing ineffective assistance of counsel under Strickland, must show fundamental unfairness. Exact same standard that applies here. And it's showing fundamental unfairness, a defendant challenging his criminal conviction must show that there was actual prejudice defined as defects that result in a reasonable likelihood of a different outcome. There's no difference between that standard, collaterally attacking criminal judgment, and the standard here, collaterally attacking a removal hearing. But the Supreme Court has held that in court, courts apply current law in assessing whether or not there was prejudice. There's no reason for a different result here, and the defendant doesn't argue that under current law, there would be a different result, and for that reason, the defendant simply cannot establish prejudice. The government didn't foresee this argument in the defendant's brief until the reply to the government's 28-J letter. The best case I can give you for that Supreme Court decision holding that current law applies is Lockhart v. Fretwell, and that's found at 506 U.S. 364. In that case, it specifically holds that courts use current law to make that outcome actual prejudice determination. Now, here, under this court's precedent in Escobar, which was the case the government cited in its 28-J letter, as well as dating back as far as at least 1995 in Torres-Sanchez, this court held that if a defendant is legally subject to deportation, the government is entitled to use that deportation as the basis for a 1326 prosecution. In other words, a defendant cannot show prejudice where he is legally subject to removal. No question that's the case here. He was convicted of an aggravated felony, and the defendant doesn't claim otherwise, and we know the district court applied the wrong standard here because nowhere in the order does the district court say anything about potential merit to whether or not the defendant was in fact convicted of an aggravated felony or whether he might have been entitled to any forms of relief. The district court doesn't address it. That's fatal to that order, and furthermore, we know that the district court didn't apply the proper standard because the district court adopted the R&R in this case, and the magistrate judge in that R&R responded to the government's entitlement. He was statutorily ineligible as a result of his aggravated felony conviction. He was ineligible for any forms of relief from deportation. In response, the magistrate judge said whether or not he was eligible for relief is not the issue. It's irrelevant. The issue here is whether arguments were available to the defendant, whether the information that the defendant could test removal was available to him. The district court adopted that R&R, and that is completely contrary to this court's case law requiring a defendant to show a reasonable likelihood he would not have been deported. He would have. Now, the second argument warranting reverse, or excuse me, the second point the government makes in its brief is that the defendant failed to carry his burden, so the district court erred when it determined that the defendant had carried his burden. The defendant makes two arguments in support of the district court's judgment. The first is that, as Judge Strauss, you mentioned, that we should really take the snapshot in time, that the case law that this court should determine prejudice is based on the case law as it existed in 1998. And that's not the law under the United States Supreme Court case I cited. The second point the defendant makes is he attempts to recast the prejudice analysis here, not on whether or not he would have been removed from the country, but instead on whether the immigration proceedings would have unfolded differently had he known he could have maybe forms of relief. But what that is is essentially his attempt to blame his own evidentiary failings on the conduct of the immigration judge. In carrying his burden here to establish that he would not have been removed from the country, he wasn't confined to the record as it existed in 1998. His burden was to come forward in this 1326 prosecution and tell the district court why he wouldn't have been removed. Give the district court the evidence it needed to find that he might have been entitled to some form of relief. He didn't do that. He did testify at the motions hearing, but he never testified as to any form of relief, anything that would have been relevant to any forms of relief or removal. Instead, he testified that had the IJSEP bond at $1,500, he was prepared to meet that bond, and he testified as to his efforts to retain an attorney back in 1998. He never testified he was subject to any hardship. He never testified as to his family's conditions. He never testified as to any fear of persecution, and for all the reasons outlined in the government's brief, he was not entitled to any deportation. Suppose we agree with you, do we reverse outright and make the finding up here that there's no actual prejudice, or would we send it back to the district court to have the district court evaluate actual prejudice? In your view? You'd reverse with direct... I'm sorry, I'm not sure if maybe you got frozen there. I didn't mean to interrupt you if I did. No, no, go ahead. I think the result here should be that this court reverses and reinstates the defendant had an attempt to carry his burden, and he failed entirely to do that. He shouldn't get a second bite at the apple. There's no question here that these issues were well presented to the district court, and at no point did the defendant ever attempt to carry that burden. At a minimum, he was obligated to tell the district court what relief was available to him and why he was entitled to it, and he never did that. He failed to carry his burden. The district court should have denied that motion, and we ask that it be reversed, the indictment reinstated, and it be remanded for trial. I'll reserve the little remainder of my time unless your honors have any questions. Thank you for your argument. Mr. Olson, we'll hear from you. Doug Olson on behalf of Mr. Arturo Leal-Monroe. I was a lawyer and his appellate lawyer. The proceedings below and the removal from 1998 were fundamentally flawed because of the conduct of the administrative judge presiding over the proceedings, rendering it essentially a sham proceeding, resulting in him being misadvised, misstatements of law, misadvised of his rights, and the inability to postpone, hire a lawyer, and proceed as he otherwise should have. And in this case, it's important to not forget what the underlying conduct was here that flawed the fundamental proceedings because what we're looking at here is a question of reviewing the merits of a prior removal proceeding to see whether they can be used in a subsequent prosecution. You have to start with the misconduct itself. Judge Rao, in terms of the misconduct here of the magistrate judge, the government has done anything to appeal that or touch that. As Magistrate Rao concluded, the conclusion that the immigration proceedings were unfair was buttressed by the immigration judge's failure to comport with standards expected of an impartial decision maker. He concludes the immigration proceedings were unfair and he wasn't afforded due process. And that's Magistrate Rao, his conclusion is that, in turn, is that the inappropriate conduct went beyond the bond process but continued when the immigration judge turned to the immigration lawyer, not Mr. Leo available that would prevent his deportation and that this was inappropriate. Judge Davis went quite a bit further in his analysis and he's used several pages to show how inappropriate the behavior was, concluding that never in this court's 36 years on the bench or 11 years as a trial attorney has it seen a judicial officer of any kind act in such an unethical, partial manner. He goes on and then he conducts his analysis. Judge Davis did, in fact, apply the right standard. He goes through an analysis where he comes forward and then the government takes umbrage with one sentence in which he says, in his analysis, because the defendant demonstrated that the results of the removal proceedings could have been different, they were fundamentally unfair. A page earlier there, he appropriately cites the right standard that the defendant is required to show at present. He cites the actual standards correctly cited by and he adopted the right standards presented by Magistrate Rao. What you have to understand here is part of the issue is that the Magistrate, the Magistrate recognized him as to his eligibility for any other forms of relief and relied on the government to tell him whether the conviction constituted an aggravated felony. As we've indicated in our briefing, there is an issue and Mr. Monroe has talked about the ability to challenge whether that conviction in 1998 constituted an aggravated felony because there was no law on it that existed in 1998, so it wasn't a foregone conclusion and that was an erroneous statement that he made to Mr. Leo Monroe. Can I have you back up just a moment, which is the actual prejudice. I did not see anything in Judge Davis's order where he analyzed, you might be right that he cited the correct standard, but I don't see anything either there or really in Magistrate Judge Rao's report and recommendation and I'm wondering if you could point me to something where he says this is the actual prejudice that your client suffered from the misbehavior of the immigration judge. Well, Judge Davis does go through an analysis of the actual prejudice to his rights that he was deprived his right to bail, right to get a lawyer, right then to present evidence, so he goes through a fundamental fairness that he was deprived of those rights, okay, but he then he affirms Judge Rao in terms of additional prejudice and Judge Rao does go through an analysis again criticizing the process itself for the failure to this whole idea of bargaining with the government's lawyer. Why don't you cut to the bottom line and tell us why there's a reasonable likelihood that the man would not have been deported? Since you say that the judge applied the right standard, we'll skip over whether he did, why is there a reasonable likelihood that he would not have been in part in Judge Magistrate's right report and recommendation where he talks about the fact that he otherwise could have been eligible for relief from deportation? On what ground? USC, it's 1182 which is also codified I think at 2112 and this is the extended hardship for family provision. Rao also then talks but he doesn't cite the conventions against torture after he notes that Mr. Arturo has discussed that he's worried about what's going to happen after he's worried about what's going to happen to him after he goes back to Mexico, he doesn't specifically cite that but clearly that's another grounds for available roof. So your two grounds are extended hardship and convention against torture? Yes, those are within the report and recommendation discussion. Well, I understand, it doesn't really matter whether the judges mentioned them, I'm just asking you now since it's a legal question, what are you saying are the grounds on which there's a reasonable likelihood that he would not have been deported? Is there anything other than the hardship? Well, those are the fundamental grounds, there's a couple other grounds cited in our underlying brief but it's basically the hardship provision under 1182. Are you eligible for that if you're an aggravated felon or does it come back to the aggravated felony question? It ends up with, actually as to that one, I'm not clear about that, and part of the problem there is that he was deprived of the opportunity to challenge that because of the advice of the judge. But look at here, we have situations where the prior proceeding itself is so fundamentally flawed, we basically didn't have, this is a sham proceeding, so we're having a judge talk a guy out of presenting any evidence. So he was deprived of the opportunity to present any evidence to do anything because the judge told him you're not eligible for any relief, that's a misstatement of the law, that's actual prejudice right there. You've got a case law that says it can be a structural error, don't you have to actually establish what would be the prejudice, why he wouldn't be deported? Well, and we don't have to establish that with certainty. All that Torres Sanchez requires and the law requires is that actual prejudice exists where the fundamental procedure defects may well have resulted in a deportation that might not otherwise have occurred. So it only may have well resulted in a deportation that might not have other occurred. And that standard is met by the potential for him to have been eligible for relief from deportation, also under the Convention Against Torture and those provisions. All of which he was misadvised by the immigration judge and talked out of presenting any evidence on. And so those avenues do exist and it was cited by Magistrate Rao in his report. The reason why I was asking about the prior proceedings is because when you get to the extreme hardship provision under 1182, all we have from what I understand, you can correct me if I'm wrong, is the statement during the immigration hearing itself in which he says, I think my father has passed away and my mother needs me. But I don't think that's extreme hardship and it doesn't appear to me that anything more was developed either before the magistrate judge or the district court in this case that would suggest that he would have been eligible for extreme hardship. Now if I'm mistaken, let me know. All right, that is the record as to that. That is the record as to that. And part of the problem here, and this is part of the theme here, is that when you have a fundamental flaw in the proceedings itself, where the proceeding itself ends up being shamed to the point that nothing gets developed in 1998 as it existed in 1998, that you can't use that against Leo Monroe because of the nature of the fundamental fairness violation that was because of the immigration judge who basically had to give up his role. Couldn't you have developed that before the magistrate judge or the district court had some sort of evidentiary? And the reason why I'm asking all this is because it seems like both of them were so concerned about the fundamental fairness in the air, which is important, don't get me wrong, that we kind of forgot about the actual prejudice. And so no record was developed even later on about whether or not there was any actual prejudice. And probably exhibit one might be at this hardship point, which is all we're left with is the flawed hearing. And so why isn't that a problem for your position? Well, I think that there was enough developed. But I agree with you is that the fundamental focus of both the hearing and the subsequent analysis by both Judge Rao and Judge Davis was the outrageous conduct of the immigration judge. I mean, Judge Davis, quite honestly, in his analysis, you can just read it off the pages. He was outraged by what happened. And then he posited what was probably a very reasonable sequence of events is that had the administrative law judge acted fairly, he would have given him bail, Mr. Monroe would have hired an attorney, he would have had a full development of the record and he would have been able to prevent his deportation is what Judge Davis' analysis was. But again, he focused, as you're correct, he focused his venom and ire primarily on this outrageous behavior of the immigration judge. And so that the rest of that was not adequately developed during the course of the hearing. And I acknowledge that. So we are left with those statements as the basis for determining the actual prejudice. But once again, I say that the actual prejudice, that's not an absolute. That says it may well have resulted in a deportation that might not otherwise occurred. I think that there's enough there that their findings as to that can be affirmed. All right. And with that, I think I'm finished. Very well. Thank you for your argument, Mr. Olson. Thank you. Ms. Kirkpatrick, we'll hear from you in rebuttal. What I heard counsel say is that he identified two bases for possible relief. What I didn't hear, what this court didn't hear, is that he was actually eligible for those forms of relief. And that's fatal here. It shows that the defendant did not carry his burden. And one final point- Is an aggravated felon ineligible for relief under the extreme hardship provision? He is, your honor. We explored that. There's a bit of a circuit split. But as an aggravated felon, he was not eligible for that. And to the extent he's claiming that he was based on his adjustment of status, he simply didn't lay a factual basis. He had other family in the country. He was moving out of his mother's house. There's no basis to confirm there's anything other than ordinary hardship here. You mentioned there was a circuit split just a second ago. What was the circuit split on? The circuit split is on the issue of whether someone who enters the country illegally and then becomes a legal permanent resident can have access to the country. Does that apply if the person is convicted of the aggravated felony later? No. So that would knock him out either way. Correct. He's knocked out as a result of that aggravated felony. The torture convention could allow relief even to an aggravated felon, but he'd have to make a factual showing, right, that he is likely to be tortured in Mexico. I think you're right, Your Honor. And at a minimum to carry his burden, he had to at least tell the district court what he was eligible for, and he didn't. He never did. And I know my time is up, but I did want to make one final point, if I may. The government does not agree that the district court's hyperbolic criticism of the IJ is warranted here. We think that the error in the if Your Honors have any question about that. But if you listen to the tape, the IJ did not defer as to the bond amount to the immigration attorney. And really, I do think that was the entire basis for the district court's finding of defects here. But as a strategic matter, the government has only appealed based on the actual prejudice, not because it doesn't disagree strongly with characterization of the IJ's conduct here. All right. Thank you both, counsel, for your arguments. The case is submitted and the court will file an opinion in due course.